

Shizuko Tadehara
48-01 42nd Street, Apt. 3D
Sunnyside, NY 11104


Honorable Judge Ronnie Abrams
United States District Judge
UNITED STATES DISTRICT COURT, SOUTHERN DISTRICT OF NEW YORK
Attention to: Pro Se Intake Unit
500 Pearl Street, Room 205, New York, NY, 10007

May 15, 2026


**Re: Plaintiff's response to DEFENDANT'S NOTICE OF MOTION TO DISMISS (Case No. 1:25-cv-10453-RA)**


Dear Judge Abrams,


I respectfully submit my response to Defendant's Notice of Motion to Dismiss (Case No. 1:25-cv-10453-RA) dated 5/1/2026. Defendant's motion should be denied because Defendant, Matrix Absence Management, treated and reviewed Plaintiff's Short-Term Disability claim as governed by ERISA, issued the final denial, and advised Plaintiff of the right to bring a civil action under ERISA § 502(a) if Plaintiff did not agree with the decision.

Defendant provided the final decision and the denial of Plaintiff's claim on 10/10/2025 that was submitted to the court previously as the attached Exhibit 41:


*"Your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"). You have the right to bring a civil action under section 502(a) of the Act following an adverse benefits determination on review. Your failure to request a review within the 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and may affect your ability to bring a civil action under the Act."*


Matrix Absence Management is a proper defendant, because Matrix stated their position to provide determination and administration of claims for the MUFG Bank, Ltd. Short Term Disability Plan (STD).

Plaintiff's complaint also asserts that Matrix failed to conduct a full, complete and fair review and failed to administer the Short-Term Disability plan in accordance with required procedures. In addition, Matrix violated the STD protocol by issuing its final appeal decision more than 90 days after Plaintiff submitted the appeal, without providing proper notice of any extension, thereby exceeding the applicable claims-procedure deadlines.

There were series of contradictory statements and actions by Defendant. For example, the final denial dated 10/10/2025 [Exhibit 41] stated below; however, Defendant provided no specific reasons for the denial and submitted no medical reports or supporting evidence. Furthermore, Defendant violated the 90-day review period by taking more than 100 days to issue the final decision. Plaintiff repeatedly demanded the final

determination and warned that legal action would be taken if Defendant continued to delay. Defendant's failure to comply with STD's mandated timeline further demonstrates the inadequacy, unreliability, and procedural deficiencies of its review process.

*"E. Notification of Benefit Determination Upon Review If, on review, the Claims Administrator determines that a claimant is not eligible for benefits, the claimant will be notified in writing within the time frames set forth in Section V. D. above. The notification will be written in a manner designed to be understood by the claimant and will set forth the following:*

*1. the specific reason or reasons for the denial;*

*2. specific references to pertinent Plan provisions on which the denial is based;*

*3. a statement that the claimant is entitled to receive, upon request, reasonable access to, and copies of, all documents, records, and other information relevant to the claim;*

*4. a statement of the right to bring a civil action and any time limits for filing such action imposed by the Plan;*

*5. if applicable, the rule, guideline, protocol or similar criterion on which the denial was based (or a statement that a copy of such is available, on request); and*

*6. if applicable, the identity of any medical or vocational expert(s) whose advice was obtained on behalf of the Plan in connection with the adverse benefit determination, whether or not the advice was relied upon in making the determination."*

*"In no event, however, will the written decision be issued more than ninety (90) days after the request for review is received. The decision of the Claims Administrator on any benefit claim will be final and conclusive upon all persons."*

Defendant stated in the final denial that an Independent Medical Examiner reviewed Plaintiff's claim, yet the denial letter also referenced alleged physician contact that never occurred. Plaintiff was never evaluated by any Independent Medical Examiner. It is inappropriate, misleading, and unethical for Defendant to rely on comments from a physician who neither examined Plaintiff nor contacted any of Plaintiff's treating physicians. Such conduct raises serious concerns about the accuracy and integrity of the review process.

*"As part of the review process, Chloe M El-Atoum, MD attempted to contact your physicians."*

*"The peer review completed by one (1) Independent Board-Certified Consultant concluded the medical evidence submitted does not have any objective medical evidence to establish a psychiatric condition that warranted functional impairment that would continue to prevent you from performing the material duties of your regular job or any reasonably related job as a Risk & Controls Testing & Assessment Associate."*

Plaintiff's treating physicians have decades of professional experiences, yet Matrix did not meaningfully address the opinions of my treating physicians, issued conclusory determinations without adequate explanation, failed to engage in a reasoned decision-making process, and did not arrange for or rely upon a valid Independent Medical Examination ("IME"). None of Plaintiff's doctors have ever encountered a denial of this nature in all their years of professional practice. One of Plaintiff's treating physicians is an expert psychologist with deep knowledge of Japanese culture, and many Japanese companies operating in the U.S.

have relied on her evaluations and treatment services. Defendant's parent company is also a Japanese company in the U.S., and it is possible they are familiar with her work or may have even used her services. Given her reputation and long-standing professional credibility, it is surprising that Defendant would reject her medical documentation. Defendant's internal review process has clearly failed, as there is no evidence of a systematic or thorough evaluation, nor any indication that the reviewer considered relevant context or referenced the parent company's likely familiarity with Plaintiff's physician's expertise.

Defendant's motion fails because Defendant previously stated that Plaintiff's claim is governed by ERISA, yet now seeks dismissal after Plaintiff exercised the right to judicial review. Defendant is inconsistently altering its stated position, and its current motion directly contradicts the representations made in the final denial letter. It is clear that Defendant has deliberately engaged in inconsistent and contradictory tactics calculated to obstruct Plaintiff's pursuit of relief and to compromise the integrity of the judicial process, all in an apparent effort to evade Defendant's clear payment obligations. Such inconsistent arguments undermine Defendant's credibility. In addition, Defendant submitted only a declaration from the HR manager, without providing the complete Summary Plan Description or any supporting documentation. This omission leaves Defendant's motion without the evidentiary foundation required to support its assertions.

For the foregoing reasons, Plaintiff has adequately pointed out Defendant's contradictory statements as required. Plaintiff was not able to have adequate rest that were advised by the treating physicians during the medical leave and forced to return to work earlier than the doctors' advice due to the financial difficulties. Plaintiff's employer has acknowledged Plaintiff's medical limitations and repeatedly approved Plaintiff's requests for workplace accommodation, reflecting Plaintiff's continued need for support.

Defendant's inadequacy of the review process caused tremendous suffering to Plaintiff and her family. Ended up, Plaintiff's short-term disability was prolonged, and Plaintiff could not return to work full time until February 2026. Defendant has also continued to approve Plaintiff's ongoing accommodation.

Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety.

Respectfully,

Shizuko Tadehara



ABSENCE MANAGEMENT

A MEMBER OF THE TOKIO MARINE GROUP



P.O. Box 13498
Philadelphia, PA. 19101
(800) 866-2301
Fax (866) 683-9548

October 10, 2025

Shizuko Tadehara
4801 42ND STREET, APT 3D
SUNNYSIDE, NY  11104

Re: Claimant:          Shizuko Tadehara
    Plan No:           ASW 517055
    Claim No:          2025-04-22-1206-ASW-01
    Employer:          MUFG Bank, Ltd.

Dear Shizuko Tadehara:

Matrix Absence Management, Inc. is the claims administrator for MUFG Bank, Ltd. Short Term
Disability Plan (STD) effective December 1, 2022.

Your claim was denied on June 9, 2025, for benefits effective May 30, 2025.   We completed
our review of your appeal.  Based on our review, we determined that you no longer meet the
definition of disability as defined by the Plan. Consequently, we are maintaining our previous
denial of benefits effective May 30, 2025.

## Claim History

| | |
|---|---|
| Employment position: | Risk & Controls Testing & Assessment Associate |
| Onset of disability: | April 30, 2025 |
| Diagnosis: | Major depressive disorder, single episode, moderate, Major depressive disorder, single episode, unspecified, panic disorder [episodic paroxysmal anxiety] without agoraphobia, Nervousness, Anxiety disorder, unspecified, Chronic fatigue, unspecified, Shortness of breath |
| STD Approval Dates: | April 30, 2025, through May 29, 2025 |
| STD Denial Date: | June 9, 2025 |
| STD Denial Effective Date: | May 30, 2025 |

STD Decision Status:

Claim denied due to medical information not supporting impairment.

Appeal Request Date:

June 23, 2025

Medical Documents Received:

Please see below section regarding medical and file information reviewed.

Communication with you:

Appeal acknowledgement letter dated July 30, 2025

Telephone communication on August 5, 2025, and September 8, 2025

Email communication on July 30, 2025, August 4, 2025, August 5, 2025, August 6, 2025, August 11, 2025, August 12, 2025, August 18, 2025, September 10, 2025, October 2, 2025, October 3, 2025, October 6, 2025, and October 7, 2025

Employer Communications:

Notice of appeal to Employer on July 30, 2025.

Job Description obtained August 5, 2025

Initial request for Peer Review authorization on August 29, 2025; authorization received August 29, 2025

Prior Medical Reviews:

May 6, 2025, May 12, 2025, June 3, 2025, July 1, 2025, and August 26, 2025

Peer Review Referral:

September 10, 2025

Peer Review Report Received:

September 17, 2025

## Plan Provisions

The following sections of the Plan are applicable to this determination:

Please refer to the Plan Document.

> "Disability" means any physical or mental condition arising from a non-occupational illness, pregnancy or injury which renders a Participant incapable of performing the material duties of his or her regular job or any reasonably related job. A Participant will also be considered to have sustained a Disability if:

1.  he or she is ordered not to work by written order from a state or local health officer because he or she is infected with, or suspected of being infected with, a communicable disease; or

2.  he or she has been referred or recommended by competent medical authority to participate as a resident in either an alcohol abuse treatment program or drug abuse treatment program.

A Participant will not be considered disabled if (i) he or she is performing work of any kind for remuneration or profit unless with the prior approval of the Plan Administrator, or (ii) he or she declines alternative employment by the Company which is within the Participant's capabilities and, as determined solely by the Company, has status and compensation comparable to the Participant's previous job.

"Objective Medical Evidence" means a measurable abnormality which is evidenced by one or more standard medical diagnostic procedures including laboratory tests, physical examination findings, X-rays, MRIs, EEGs, ECGs, CAT scans or similar tests that support the presence of a Disability or indicate a functional limitation. Objective Medical Evidence does not include Physician's opinions based solely on the acceptance of subjective complaints (e.g. headache, fatigue, pain, nausea), age, transportation, local labor market and other non-medical factors. To be considered an abnormality, the test result must be clearly recognizable as out of the range of normal for a healthy population; the significance of the abnormality must be understood and accepted in the medical community and the abnormality must support and correlate to the disability and not be merely an incidental finding.

## Medical and File Information Reviewed

We received and reviewed the following medical and other information in connection with our determination of your claim.

| Document Date | Document Type | Document Source |
|---|---|---|
| April 22, 2025 | Authorization For Release Of Information | Claimant |
| May 2, 2025 | Accommodation Certification Form Disability (Non-Pregnancy Related) | Audrey Weissman, MD |
| May 2, 2025 | Health Care Provider Medical Certification | Audrey Weissman, MD |
| May 5, 2025 | Telehealth Therapist Intake - Initial Evaluation / Diagnostic Summary | Bracha Fishman, LMHC, RPN |

| May 6, 2025 | Correspondence - Psychotherapy Treatment Attendance | Bracha Fishman, LMHC, RPN |
|---|---|---|
| April 8, 2025, April 15, 2025, May 13, 2025 | Progress Notes | Sergio Sokol, MD |
| May 12, 2025, May 19, 2025, May 30, 2025, June 5, 2025 | Telehealth Psychotherapy - Progress Notes | Bracha Fishman, LMHC, RPN |
| May 22, 2025 | Health Care Provider Questionnaire : Behavioral Health | Megumi Omonishi, PhD |
| June 16, 2025 | Therapist - Progress Notes | Takashi Matsuki, MD |
| June 22, 2025, August 12, 2025 | Correspondence | Megumi Omonishi, PhD |
| June 23, 2025 | Appeal Letter | Claimant |
| May 29, 2025, June 26, 2025, July 29, 2025, August 14, 2025 | Office Visit Notes | Elina Kaziyeva, FNP |
| August 5, 2025 | Job Description | Employer |
| August 5, 2025 | Job Description and Requirements | Employer |
| April 2, 2025 | ECG | Signature Illegible |
| May 8, 2025 | Echocardiogram | Medical Associates Of Wall Street Mobile Medical |

## **Clinical Judgment or Rational**

In order to qualify for Short Term Disability Benefits as of May 30, 2025, your non-occupational illness, pregnancy or injury must prevent you from performing the material duties of your regular job or any reasonably related job as a Risk & Controls Testing & Assessment Associate.

The medical and other information and evidence available to Matrix no longer supports a finding of "Disability" as defined by the Plan.  Please review the information below for details.

Matrix originally received your claim via intake on April 22, 2025.  Your last date worked was on April 29, 2025, and your date of disability was April 30, 2025.  STD benefits were initially approved from April 30, 2025, through May 29, 2025. To determine your eligibility for continued benefits, updated clinical records were obtained and submitted for a review by our medical department for an assessment of disability. It was determined that the medical information submitted no longer substantiated physical or psychiatric impairment that prevented you from performing the material duties of your regular job or any reasonably related job, and your claim was denied for continued disability benefits as of May 30, 2025.

We received your request for an appeal on June 23, 2025; however, your claim was not assigned to the appeal unit until July 28, 2025. As part of our review process, we contacted you to confirm the information in your claim file and to determine if any additional information would be submitted for your appeal. In response to our initial contact from July 30, 2025, you provided the completed Authorization for Use in Obtaining Information from your email the same day. On August 4, 2025, you emailed our unit evaluation notes from Elina Kaziyeva, FNP, from June 26, 2025, and July 29, 2025. We attempted to call you on August 5, 2025, to gain a better understanding of the events related to your condition(s) that prevented you from working but had to leave a voicemail. An email was provided on August 5, 2025, with the list of medical information provided at that time. Additionally, we obtained the job description from your employer who also indicated that you were working from home as an accommodation. You continued to submit additional medical documentation via email until August 15, 2025.  On August 20, 2025, we proceeded with our review.

On September 10, 2025, your historical medical from claim receipt through the appeal submission process was submitted for review by one (1) Board Certified Independent Peer Physician.  The physician completing the review was Chloe M El-Atoum, MD, Board Certified in Psychiatry. The reviewer was asked to review the available clinical documentation to determine if the information supported an inability to perform work as of May 30, 2025, ongoing.

The following is a summary of information reviewed by the physicians on September 17, 2025:

- Job Description:  Risk & Controls Testing & Assessment Associate. Support the execution and documentation of risk assessments and controls testing for in-scope processes across business units.  Partner with stakeholders, including process owners and control officers, to document controls, enhance control language, and develop/maintain test scripts that validate controls are being performed in compliance with bank policies, procedures, and regulatory requirements to mitigate technology risk to the firm.  Execute testing of controls based on internal and industry standards and guidelines for design and effectiveness.  Participate in walkthroughs for controls and prepare meaningful documentation • - Coordinate control testing activities, including logistical scheduling and document retrieval to support control testing in accordance with internal requirements. Provide project management support in tracking and coordinating the execution of policy and standards control testing activities.  Liaise with risk assessment team and other stakeholders to ensure control testing is in alignment with broader risk assessment activities. Create synergies by identifying opportunities to repurpose control testing results to satisfy assessment requirements across the bank. Develop and distribute status reporting and communication related to control testing activities. Provide ongoing communication to internal stakeholders throughout the testing process to keep them apprised of progress and findings, escalating when appropriate. Prepare written reports that summarize the objectives, scope, findings, and conclusions for each assigned review. Support iterative review and challenge of assessment results, working with appropriate stakeholders across the lines of defense. Support adoption of automated testing platform by identifying controls for inclusion and respective prerequisites and logic for automated testing. Work collaboratively with risk and control team to execute against technology

risk governance procedures. Coordinate required meetings, reviews, and scheduling needs. Prepare materials for ongoing team meetings and meetings with senior leadership.

- May 22, 2025: A Health Care Provider Certification by Dr. Megumi Omonishi (Psychologist) noted your diagnoses included MDD moderate and anxiety disorder unspecified. You had anxious mood, constricted affect, sad facial expression, and tousled hair. Speech, eye contact, and psychomotor activity was within normal limits (WNL). On May 16, 2025, you had tousled hair, anxious mood/affect. Thought process/content and motor/speech was normal. Orientation x4 was noted. Memory was normal, insight/judgment was good, and attention/concentration was somewhat limited.

- May 29, 2025: Elina Kaziyeva, FNP noted you presented to the office to continue medical FMLA. You reported following with a therapist. You reported that you were able to rest from your stressful work environment. You were diagnosed with anxiety.

- May 30, 2025: Bracha Fishman, LMHC, RPN noted you presented for an online session. You sounded relaxed, seeming more present/alert, and saying you had more energy than before. Treatment plan was weekly.

- June 5, 2025: Bracha Fishman, LMHC, RPN noted you smiled pleasantly and appeared to be in an elevated mood and prepared to engage in the session. You reported you felt better. You were still waiting to hear back from your disability claim. You reported fear of going back to the same work environment.

- June 20, 2025: Dr. Megumi Omonishi noted you reported workplace stress and for medical leave. You reported you were unable to work due to symptoms of depression and anxiety. You reported cognitive impairments, somatic symptoms, and anticipatory anxiety. MSE was unremarkable with the exception of you appearing anxious and worried. The plan was to continue therapy.

- June 22, 2025: Correspondence by Dr. Megumi Omonishi noted you were seen on February 5, 2025, May 16, 2025, and June 16, 2025. You reported experiencing workplace stress and being assigned an excessive workload following multiple staff layoffs. You reported cognitive impairments, somatic symptoms, and anticipatory anxiety. Your diagnoses included MDD and anxiety disorder. You should remain on leave of absence through the end of September 2025.

- June 26, 2025: Elina Kaziyeva, FNP noted you presented to continue medical FMLA. You follow with a psychologist monthly. Elina Kaziyeva, FNP, noted you should remain out of work.

- July 29, 2025: Elina Kaziyeva, FNP noted you presented to continue medical FMLA. You reported that your anxiety was improving. Elina Kaziyeva, FNP noted you should remain out of work pending follow up examination.

- August 12, 2025: Dr. Megumi Omonishi noted you had been seen on February 5, 2025, May 16, 2025, June 16, 2025, and July 15, 2025. You continued to report chronic fatigue and impairments in executive functioning. You expressed some interest in returning to work if you could do so remotely. You were unable to work due to cognitive impairments, somatic symptoms, and anxiety symptoms. Your diagnoses included major depressive disorder, moderate and anxiety symptoms.

- August 14, 2025: Elina Kaziyeva, FNP noted you reported your anxiety was improving gradually and you would continue exercising seeing your psychologist.

As part of the review process, Chloe M El-Atoum, MD attempted to contact your physicians. Dr. El-Atoum, left messages for Dr. Megumi Omonishi, Elina Kaziyeva, FNP, and Dr. Audrey Weissman on September 11, 2025, September 15, 2025, and September 16, 2025, with no return call received to date.

After a review of your medical records and job description Chloe M El-Atoum, MD, opined there was no support for functional impairment as of May 30, 2025, from a psychiatric perspective. Dr. El-Atoum concluded:

> *Based on the review of the medical information there was no support for functional limitations sufficient to preclude working from 5/30/2025 through 10/1/2025.*

> *The claimant reported symptoms of depression, anxiety, panic, and chronic fatigue interfering with her ability to work. However, MSE findings were essentially unremarkable and do not corroborate the severity of the claimant's complaints.*

> *In addition, the claimant's complaints were related to her work environment, which is not consistent with a global psychiatry impairment. The claimant was not started on any psychotropic medications.*

When asked whether any of your prescribed medications, whether taken individually or in combination, had any bearing on your functional abilities, the reviewer opined that none of your prescribed medications would have any impact on your work ability. There were no reported side effects or complications noted.

In summary:

The peer review completed by one (1) Independent Board-Certified Consultant concluded the medical evidence submitted does not have any objective medical evidence to establish a psychiatric condition that warranted functional impairment that would continue to prevent you from performing the material duties of your regular job or any reasonably related job as a Risk & Controls Testing & Assessment Associate.

While we recognize that you had symptoms regarding your diagnoses, the available medical information does not demonstrate that your condition rose to the level that would have prevented you from working as of May 30, 2025, ongoing.

## Conflicting Disability Opinions

- The clinical evidence submitted to date does not provide objective medical evidence to support a functional impairment. There was no documentation of severe psychiatric symptoms, significant abnormalities on mental status examination, psychiatric medication side effects, and no need for high-level psychiatric care. Participation in treatment including use of medication and / or therapy alone does not constitute sufficient evidence of impairment that would preclude working.

- A peer review completed by board certified specialist in psychiatry determined there was no objective medical evidence to support functional impairment as of May 30, 2025, ongoing.

- Your provider indicated that you showed improvement with increased energy from May 30, 2025, observations.

- You reported inability to work due to workplace stress from evaluation on June 20, 2025; however, no formal testing or MSE (mental status exam) findings were abnormal.

- The findings of the clinical documentation do not provide sufficient evidence to explain how any of the reported psychiatric symptoms would limit your overall functional capacity outside work during the period of review. You were not having problems with ADLs/IADLs, able to drive, care for self, make decisions, attend appointments, etc., which are all not consistent or supportive for an individual deemed to have a "global" impairment in functioning which is a primary criterion for supporting behavioral health impairment from clinical review standpoint.

- Typical psychiatric treatment for the severity of symptoms leading to functional impairments would generally include at least monthly treatment by a psychiatric physician (MD, Psych NP or Psych PA) for aggressive medications management and at least weekly psychotherapy, if not participation in an Intensive Outpatient Program (IOP), Partial Hospital Program (PHP) or inpatient/residential care. However, participation in treatment (medication and/or therapy, excluding inpatient) alone does not constitute sufficient evidence of impairment that would preclude working.

## Appeals Rights

**Second Level of Appeal:**   Any Participant or the representative of a Participant whose appeal has been denied will have the right to request a review of the decision made on his or her claim. Such request must:

1. be in writing and submitted to the Claims Administrator at the following address:

> Matrix Absence Management Quality Assurance Review c/o RSLI
> P.O. Box 13498
> Philadelphia, PA. 19101

2. be filed within one hundred eighty (180) days after receipt of the written decision;

3. set forth all of the grounds upon which the request for review is based and any facts in support thereof; and

4. set forth any issues or comments, which the Participant deems pertinent to his or her claim.

The Participant or his or her representative may review documents pertinent to his or her claim.

Upon receipt of the request for review of the decision, the Claims Administrator will consider the written request and provide the Participant with a written decision within forty-five (45) days after receipt of the request for review. This review:

1. shall give no weight to the initial adverse benefit determination;

2. will be rendered *de novo,* with a review of the entire file, including any new materials and arguments submitted since the initial adverse benefit determination;

3. will be rendered by an appropriately named individual who neither made the adverse benefit determination that is the subject of the appeal, nor is the subordinate of that individual;

4. will be rendered in consultation with a Health Care Professional who has appropriate training and expertise in the field of medicine involved in the medical judgment, if the initial adverse benefit determination was made in consultation with a Health Care Professional and if the adverse benefit determination is based in whole or in part on a medical judgment; and

5. will be rendered with the consultation of a Health Care Professional who was not the individual consulted during the adverse benefit determination that is the subject of the appeal, nor the subordinate of that individual, if the initial adverse benefit determination was made in consultation with a Health Care Professional.

Should additional time be required in which to review the Participant's request, the Participant will be notified on or before the date the forty-five (45) day period expires. The extension notification sent to the Participant will indicate (i) the special circumstances requiring an extension, and (ii) the date and time by which the Claims Administrator expects to render a determination on review. In no event, however, will the written decision be issued more than ninety (90) days after the request for review is received. The decision of the Claims Administrator on any benefit claim will be final and conclusive upon all persons.

E.    *Notification of Benefit Determination Upon Review*    If, on review, the Claims Administrator determines that a claimant is not eligible for benefits, the claimant will be notified in writing within the time frames set forth in Section V. D. above. The notification will be written in a manner designed to be understood by the claimant and will set forth the following:

1.    the specific reason or reasons for the denial;

2.    specific references to pertinent Plan provisions on which the denial is based;

3.    a statement that the claimant is entitled to receive, upon request, reasonable access to, and copies of, all documents, records, and other information relevant to the claim;

4.    a statement of the right to bring a civil action and any time limits for filing such action imposed by the Plan;

5.    if applicable, the rule, guideline, protocol or similar criterion on which the denial was based (or a statement that a copy of such is available, on request); and

6.    if applicable, the identity of any medical or vocational expert(s) whose advice was obtained on behalf of the Plan in connection with the adverse benefit determination, whether or not the advice was relied upon in making the determination.

IMPORTANT NOTICE: The Genetic Information Nondiscrimination Act of 2008 (GINA) prohibits employers and other entities covered by GINA Title II from requesting or requiring genetic information of an individual or family member of the individual, except as specifically allowed by this law. To comply with this law, we are asking that you NOT provide any genetic information when responding to this request for medical information. `Genetic information' as defined by GINA, includes ●an individual's family medical history; ●the results of an individual's or family member's genetic tests; ●the fact that an individual or an individual's family member sought or received genetic services; and ●genetic information of a fetus carried by an individual or an individual's

family member or an embryo lawfully held by an individual or family member receiving assistive reproductive services.

## What is needed to perfect your claim for benefits

Perfecting your claim means providing all the information and evidence necessary to establish your right to benefits under the Plan.  In order to perfect this claim and to demonstrate that the requested disability benefits are payable you must furnish us with information that has not already been submitted and may include the following:

- New objective medical evidence that supports  psychiatric functional limitations that would keep you from working as of May 30, 2025, ongoing.

- Any and all medical records regarding your claim you wish to submit to support your time out of work and were not previously received by Matrix, such as test results, chart notes or medical certifications (or list out specific records that we know were outstanding at the time of the decision).

Your claim is subject to the Employee Retirement Income Security Act of 1974 ("the Act"). You have the right to bring a civil action under section 502(a) of the Act following an adverse benefits determination on review. Your failure to request a review within the 180 days of your receipt of this letter may constitute a failure to exhaust the administrative remedies available under the Act, and may affect your ability to bring a civil action under the Act. You may, upon request and free of charge, have reasonable access to and copies of all documents, records, and other information relevant to your claim for benefits.

## Copies of Documents

You are entitled to receive, upon request and free of charge, copies of all documents, records, and other information relevant to your claim for benefits.

- You may also obtain a printed copy of the guidelines upon request to your claim examiner.
- No action may be brought against the Plan Administrator to recover on this Policy beyond October 10, 2028.

## Closing Paragraphs – Conclusion

In conclusion, based on our review of your employer's Plan, the requirements of your position, the medical documentation submitted, and the clinical review conducted, and what all this information reveals about the capacity you have to work, we determined you no longer meet the definition of disability for the MUFG Bank, Ltd. Short Term Disability Plan as of May 30, 2025, and we are maintaining the original decision to deny benefits.

Nothing in this letter should be construed as a waiver of any of MUFG Bank, Ltd.'s rights and defenses under the above Plan, and all these rights and defenses are reserved to MUFG Bank, Ltd. whether or not specifically mentioned herein.

If you have any questions or concerns please contact us at 1-800-866-2301.

Sincerely,

*Carolynn McKeown*

Carolynn McKeown
Sr. Claims Appeals Analyst
Appeals Unit, Claims Governance



SDNY PRO SE INTAKE OFFICE
2026 MAY 18 AM 11:43
RECEIVED